**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRADLEY W. WEBB,** | : | **CIVIL NO. 1:15-CV- 221** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WAYNE GAVIN, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

**MEMORANDUM  OPINION**

I.    **Statement of Facts and of the Case**

The petitioner in this case, Bradley Webb, is a convicted murderer, and a repeat offender.   In this petition Webb belatedly challenges a 2009 Parole Board determination which extended his maximum release date to July 2015.  This Parole Board action followed a series of parole violations by Webb, including violations that involved the commission of new crimes while on parole.

For the reasons set forth below, this petition will be denied.

The facts of this case can be simply stated:  In 1995 Webb was charged in Chester County, Pennsylvania with murder.  (Doc. 18-1, Ex. 1.)  Webb pleaded guilty

to a charge of third degree murder on March 11, 1997, and received a 7-to-14 year jail sentence. (Id.) Under the terms of this sentence, the minimum expiration date for this sentence was August 2002. (Id.) In fact, on September 30, 2002, Webb was released on parole from this 7-to-14 year sentence. At that time, an initial maximum sentence date of August 3, 2009, was set by the Parole Board for Webb. (Id.)

What then followed was a decade of intermittent parole supervision for Webb, supervision marked by repeated violations and parole revocations. Thus, on March 31, 2004, the Parole Board entered a decision detaining Webb pending disposition of new criminal charges lodged against him, and recommitted Webb as a technical parole violator for violating conditions of this parole. (Id., Ex. 2.) Ten months later, on January 5, 2005, the Board recommitted Webb to custody as a convicted parole violator after he was convicted of a crime that he committed while on parole. (Id., Ex. 3.) Consistent with what were then the provisions of state law, Webb also lost credit for the time he had spent on parole before committing this new offense. Therefore, the January 5, 2005, Parole Board decision re-calculated Webb's parole violation maximum date, extending that date to June 15, 2011. (Id., Ex. 3.)

Six months later, on July 5, 2005, Webb was released on parole for a second time. At this time, Webb's parole violation maximum release date remained June 15, 2011. (Id., Ex. 4.) Four years later, while on parole, on October 30, 2009, the Board

ordered Webb recommitted as a convicted parole violator after he was convicted of two counts of driving under the influence of alcohol and other related offenses, crimes that he had once again committed while on parole.  (Id., Ex. 5.)  As was the case with his prior revocation, on this occasion Webb also lost credit for the time he had spent on parole before committing this new offense.  As a result, the October 30, 2009, Parole Board decision extended Webb's  parole violation maximum sentence date to July 29, 2015.  (Id., Ex. 5.)

This October 30, 2009, Parole Board decision advised Webb of his appeal rights.  (Id.)  However, Webb did not choose to challenge the October 30, 2009, decision, either through the Board's administrative appeal process or in a Pennsylvania court.  What then followed were a series of discretionary decisions by the Parole Board over the next several years, denying Webb early release on parole on June 29, 2010, (Id., Ex. 6); and December 21, 2010. (Id., Ex. 7.)  None of these decisions affected the July 29, 2015, maximum release date set by the Board for Webb in 2009, a maximum release date which Webb had never challenged.

On March 12, 2012, Webb was released on parole for a third time.  At this time Webb's parole violation maximum date remained the date set by the Board in 2009, July 29, 2015.  (Id., Ex. 8.)  Five months later, on August 31, 2012, the Board recommitted Webb as a technical parole violator, after he violated the conditions of

3

his parole.  (Id., Ex. 9.)  Webb was then refused parole on May 31, 2013.  (Id.,  Ex.

10.)  It was only at this time, some four years after-the-fact, that Webb began making

halting and procedurally improper efforts to challenge the maximum release date set

in his case in 2009.  These efforts began on August 7, 2013, when the Board received

a copy of a letter Webb wrote to a state senator, which appeared to challenge the July

29, 2015, maximum date established in the Board's October 30, 2009, decision. (Id.,

Ex. 11.)  On December 3, 2013,the Parole Board advised Webb that any attempt to

challenge the parole violation maximum date was now untimely.  (Id., Ex. 12.)  Webb

did not appeal the December 3, 2013, Parole Board determination through the avenues

prescribed by state law by filing a petition for review in the appellate jurisdiction of

the Commonwealth Court of Pennsylvania.  Instead, on June 9, 2014, Webb filed a

petition for writ of habeas corpus in the Supreme Court of Pennsylvania, followed on

June 30, 2014, by an application for leave to proceed in that court's original

jurisdiction. (Id.,Ex. 13.).  On September 12, 2014, the Pennsylvania Supreme Court

granted the application for leave to file in its original jurisdiction but denied Webb's

petition for writ of habeas corpus.  (Id., Ex. 13.)

Webb then filed this federal habeas corpus petition on January 29, 2015.  (Doc.

1.)  Webb's petition has been fully briefed by the parties, (Docs. 1 and 18.), and is,

therefore, ripe for resolution.

For the reasons set forth below, the petition will be denied.

## III.   Discussion

### A.     State Prisoner Habeas Relief–The Legal Standard

A state prisoner seeking to invoke the power of this Court to issue a writ of

habeas corpus must satisfy the standards prescribed by Title 28, United States Code,

Section 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a
> district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment
> of a State court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted unless it appears that–
>
> > **(A)** the applicant has exhausted the remedies available in
> > the courts of the State;
> >
> > . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on
> the merits, notwithstanding the failure of the applicant to exhaust
> the remedies available in the courts of the State.
>
> 28 U.S.C. § 2254 (a) and (b).

5

1.    **Substantive Standards Governing Section 2254 Petitions**

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief.  At the outset, federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", Section 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.  See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to Section 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension.  See, Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

**B.**    **Procedural Thresholds for Section 2254 Petitions**

**1.**    **Exhaustion of State Remedies**

State prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that

a complete factual record is created to aid the federal courts in their review of a § 2254 petition.  Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts.  Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982).  A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

### 2.   Statute of Limitations

Furthermore, state prisoners seeking relief under Section 2254 must also timely file petitions requesting habeas corpus relief.  The Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners.  In pertinent part, § 2244(d)(1) provides as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(c) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules.  At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424.  Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review.  However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law.  Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period.  Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id.

at 618-19.   Yet, while equitable tolling is permitted in state habeas petitions under

AEDPA, it is not favored.   As the United States Court of Appeals for the Third Circuit

has observed: "[E]quitable tolling is proper only when the 'principles of equity would

make [the] rigid application [of a limitation period] unfair.'   Generally, this will occur

when the petitioner has 'in some extraordinary way ... been prevented from asserting

his or her rights.'   The petitioner must show that he or she 'exercised reasonable

diligence in investigating and bringing [the] claims.'   Mere excusable neglect is not

sufficient."   Id.   at 618-19 (citations omitted).   Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from
> asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong
> forum.
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, courts have held that:  "In non-capital cases, attorney

error, miscalculation, inadequate research, or other mistakes have not been found to

rise to the 'extraordinary' circumstances required for equitable tolling.  See Freeman

v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the

statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations.  See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners often invite  courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by the courts. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3d.Cir. 2003)(denying equitable tolling request); Robinson v.  Johnson, 313 F.3d 128 (3d. Cir. 2002)(same).

### C. Webb's Petition Fails Both on Procedural and Substantive Grounds

#### 1. This Petition is Untimely and Unexhausted

Judged by these legal guideposts, in this case Webb's petition fails both on substantive and procedural grounds.  At the outset, the petition is procedurally flawed in that Webb has failed both to exhaust his state remedies and to bring this petition in a timely fashion.

The gravamen of Webb's petition is his contention that the Parole Board's extension of his maximum release date to July of 2015 was improper. Yet, this Parole Board action, which forms the basis of Webb's federal habeas corpus petition, took place in October of 2009, and was never timely challenged by Webb at the time that it occurred.

Webb's failure to exhaust his avenues of redress in state court now has significance for this petitioner. It is well-settled that exhaustion of available state remedies is an absolute prerequisite to filing a federal habeas petition. 28 U.S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). As the person seeking to invoke habeas relief, Webb bears the burden of establishing that he has exhausted state remedies, Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). Webb cannot satisfy this burden and will not be deemed to have exhausted his state remedies as long as he had the right under state law to raise the question presented in his habeas petition. 28 U.S.C. § 2254(c); Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir.2002).

In this case Webb is a criminal recidivist and parole violator who was recommitted as a parole violator in 2009 following a criminal conviction, and had his

maximum release date extended to July 2015 at that time.  In the intervening six years, Webb received a number of parole hearings between 2010 and 2012.  Webb could have challenged any of these decisions, both through the board's administrative review process, see 37 Pa.C.S. § 73.1, and by filing by a timely appeal to Commonwealth Court.  See Bronson v. Pennsylvania Board of Probation and Parole, 491 Pa. 549, 421 A.2d 1021 (1980) (revocation), McMahon v. Pennsylvania Board of Probation and Parole, 504 Pa. 240, 470 A.2d 1337 (1983) (recalculation).  However, it appears that Webb never pursued any of his available state remedies to challenge these various state parole decisions in a timely manner.  That failure to pursue available state remedies is now fatal to this petition.  Since Webb has failed to fully and properly exhaust his state remedies, his petition should be denied.  Indeed, such petitions have routinely been denied in the past where, as in this case, it has been shown that the petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court.  See, e.g., Warwick v. Miner, 257 F. App'x 475 (3d Cir.2007); Williams v. Winder, 232 F. App'x 177 (3d Cir.2007); Coady v. Vaughn, 251 F.3d 480 (3d. Cir.2001).

Webb's petition is also time-barred.  At the heart of this petition lies Webb's contention that the Parole Board erred when it extended his maximum release date to July 2015.  That Board decision took place in October of 2009.  Given that §

14

2244(d)(1) provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," it was, therefore, incumbent upon Webb to bring this petition by August 2010. Webb failed to do so and that failure now bars consideration of this federal habeas corpus petition.

Webb cannot save this untimely petition through any form of equitable tolling. At the outset, Webb has not carried his burden of establishing the first prerequisite to equitable tolling since he has not shown that: "the petitioner has *'in some extraordinary way* ... been prevented from asserting his or her rights.'" Miller, 145 F.3d at 618-19 (citations omitted)(emphasis added). Indeed, there seems to have been no impediment to Webb pursuing this claim in a more timely fashion. Further, Webb has failed to satisfy the second basic prerequisite for equitable tolling. He has failed to show that he "'exercised reasonable diligence in investigating and bringing [the] claims.'" Miller, 145 F.3d at 618-19 (citations omitted). Rather than showing reasonable diligence, we find that Webb's approach to this litigation is largely marked by indolence. It is entirely undisputed that Webb allowed years to lapse without challenging this October 2009 Parole Board decision. In the face of this undeniable record of inaction, no form of statutory tolling analysis can save this petition from the fate which AEDPA's one-year statute of limitations dictates for any habeas petition brought six years after the Parole Board's decision extending Webb's maximum

release date.  On its face, this petition is untimely and falls outside § 2244(d)'s one-year limitation period.

## 2.    The Petition Fails on its Merits

Moreover, when we consider this petition on its merits we find that this petition fails because Webb has not identified state conduct in this case which violates "the Constitution or laws or treaties of the United States" and led to a fundamental defect which inherently resulted in a complete miscarriage of justice in a fashion which was completely inconsistent with rudimentary demands of fair procedure.  Fairly construed, Webb's petition simply challenges the fashion in which the parole board revoked, recalculated and extended his term of incarceration following parole violations which involved new criminal conduct.

State inmates like Webb frequently invite federal courts to revisit discretionary parole determinations by challenging those parole decisions on due process grounds. Yet these invitations are rarely embraced by the courts.  Thus, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend constitutional due process, and have denied habeas relief to such petitioners. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-

5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law.  At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole).  These cases all further recognize that the Pennsylvania parole  statute does not create a liberty interest in the right to be paroled.  Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp 474, 476-77 (E.D. Pa. 1996);  McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993).  Therefore, Webb may not premise his habeas petition on a claim of some constitutional entitlement to parole.

Thus, it is "clear that the federal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision.  Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir.2001)."  Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002).  Rather, in this

setting, "[t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.' " Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).

Recognizing these legal realities, in this case Webb's petition attacks another aspect of the parole process:  the fact that, under certain circumstances, state law in 2009 called for the forfeiture of time spent on parole by criminal recidivists like the petitioner who violate their parole supervision.  See 61 Pa. C.S. §§ 6138(a)(2) and (c)(2).  Thus, at bottom, Webb's petition launches a constitutional challenge to what was the existing statutory structure of Pennsylvania's parole statute in 2009 when these parole decisions were made.  The difficulty with this claim is that it is well-established that this aspect of Pennsylvania's parole statute is constitutional.  See United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims).  Indeed, for the past twenty-five years federal courts have expressly considered the provision of state law challenged by Webb, which permits the recalculation and extension of parole release dates for recidivists who violate the terms of their release, and have held that "[n]o [federal] constitutional question is involved in the Parole Board's failure to give relator credit for time on parole and its adjustment of the expiration date of his new maximum." See United States ex rel. Heacock v. Myers, 367 F.2d 583 (3d Cir.1966) (expressing

"complete accord" and affirming opinion of district court in <u>United States ex rel.</u>

<u>Heacock v. Myers</u>, 251 F.Supp. 773, 774 (E.D.Pa.1966)).  As this Court observed

more than twenty years ago when it disposed of a similar inmate complaint:

> Petitioner contends that in taking away his "street time" the Board
> unlawfully extended his maximum sentence in violation of his rights
> under the Fifth and Fourteenth Amendments. [The Pennsylvania State
> parole statute], directing the Pennsylvania Board of Parole to give a
> recommitted, convicted parole violator no credit for time spent on liberty
> while on parole, has withstood numerous constitutional challenges in the
> federal courts. [This statute] has been held not to violate the due process
> and equal protection guarantees of the federal constitution, and not to
> violate the constitutional prohibitions against double jeopardy, bills of
> attainder, cruel and unusual punishment or ex post facto laws. <u>See also</u>,
> <u>United States ex rel. Heacock v. Myers</u>, 251 F.Supp. 773 (E.D.Pa.1966),
> <u>aff'd per curiam</u>, 367 F.2d 583 (3d Cir. 1966), <u>cert. denied</u>, 386 U.S. 925
> (1967); <u>United States ex rel. Brown v. Pennsylvania Board of Parole</u>, 309
> F.Supp. 886 (E.D.Pa.1970); <u>Gomori v. Maroney</u>, 196 F.Supp. 190
> (W.D.Pa.1961), aff'd, 300 F.2d 755 (3d Cir. 1962).  In view of the
> foregoing authorities, the Court finds petitioner's contention without merit.

<u>Choice v. Pennsylvania Bd. of Parole</u>, 448 F.Supp. 294, 298 (M.D.Pa.,1977)(footnotes
and citations omitted).

These observations remain as pertinent and compelling today as they were in

1977, and continue to rebut any habeas challenge to the Parole Board's compliance

with existing state law, which in 2009 refused to reward parole violators with credit

for time spent on parole.[1]   Moreover, in this case the Parole Board persuasively

---

[1] Webb also suggests that the Board somehow erred by not awarding him
credit under 61 Pa.C.S. § 6138(a)(2.1).  However, this argument fails because that
subsection of the statute was not in effect until September of 2012, almost 3 years
after Webb's parole violation maximum date was established.

demonstrates that the calculation of this forfeited parole time was careful, accurate and wholly in accord with existing state law. Therefore, we find no error in this parole expiration date recalculation.

Judged against these benchmarks, there is nothing " 'conscience shocking' or 'deliberately indifferent,' " Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002), about the Parole Board's 2009 decision revoking credit for the time Webb spent on parole, time spent, in part, indulging in new crimes. In short, the extension of Webb's parole date does not constitute a violation of a fundamental constitutional right owed to the petitioner. Rather, this action represents a straightforward application of a constitutionally valid state law to the repeated misdeeds of a felon, and recidivist. In the Court's view, far from reflecting arbitrary action, this Parole Board judgment appears to represent a careful, informed balancing of the interests of both the inmate and society. It was, therefore, the very essence of informed, discretionary decision-making which is the duty and responsibility of the Parole Board. Since nothing in this Parole Board decision offends the constitution or laws of the United States, this petition for writ of habeas corpus should be denied.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRADLEY W. WEBB,** | : | **CIVIL NO. 1:15-CV- 221** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WAYNE GAVIN, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## ORDER

AND NOW, this 14th day of July 2015, for the reasons set forth in the accompanying Memorandum Opinion, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2254,  IT IS ORDERED that the Petition is DENIED, that a certificate of appealability should not issue, and the clerk is directed to CLOSE this case.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge